UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. MO-16-CV-309 |
| | ) |
| ALL RIGHT, TITLE AND INTEREST IN | ) |
| THE REAL PROPERTY AND | ) |
| APPURTENANCES LOCATED AT 351 NE | ) |
| 1250, ANDREWS, TEXAS 79714, WITH | ) |
| ALL IMPROVEMENTS AND | ) |
| ATTACHMENTS THEREON, | ) |
| | ) |
| Respondent. | ) |

**VERIFIED COMPLAINT FOR FORFEITURE**

The United States of America, by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, respectfully moves this Court pursuant to Rule G, Supplemental Rules of Federal Rules of Civil Procedure and respectfully alleges as follows:

**I.
NATURE OF THE ACTION**

1. This action is brought by the United States of America seeking forfeiture to the United States of all right, title and interest in the property described below:

> Real property and appurtenances located at 351 NE 1250, Andrews, Texas 79714, with all improvements and attachments thereon

**(hereinafter the "Respondent Property").**

## II.
## STATUTORY BASES FOR FORFEITURE

2.  This is a civil forfeiture action *in rem* brought against the Respondent Property for alleged violations of 18 U.S.C. § 1341. The United States of America is seeking forfeiture of the Respondent Property pursuant to 18 U.S.C. § 981(a)(1)(C).

3.  Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of [Title 18], or a conspiracy to commit such offense." Pursuant to 18 U.S.C. §§ 1956(c)(7) and 1961(1), the term "specified unlawful activity" includes any act which is indictable under 18 U.S.C. § 1341 (relating to mail fraud).

4.  The Respondent Property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting and derived from proceeds traceable to mail fraud, in violation of 18 U.S.C. § 1341.

## III.
## JURISDICTION AND VENUE

5.  Under 28 U.S.C. § 1345, this Court has jurisdiction over an action commenced by the United States, and under 28 U.S.C. § 1355(a), jurisdiction over an action for forfeiture. This Court has *in rem* jurisdiction over the Respondent Property under 28 U.S.C. §§ 1355(b) and 1395(b). Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A), because the acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b), because the Respondent Property is located in this District.

## IV.
## FACTS IN SUPPORT OF FORFEITURE

### Overview of the Scheme

6. This case relates to a scheme by Randall V. Hanks ("Hanks") to defraud his former employer, SCS Technologies, LLC ("SCS"), by submitting field tickets and invoices to SCS that falsely listed goods and services as having been provided by Hanks or his company Sandhill Electric, when in fact such goods and services had not been provided.

7. According to its website, SCS is a design and fabrication company that services the oil industry and specializes in PLC based control systems, control panel fabrication, and custody transfer liquid measurements, including LACT units, through all current metering technologies. SCS is locally owned and operated in Big Spring, Texas.

8. The investigation revealed that, on or about March 29, 2015, Hanks was employed by SCS to manage the electrical division. This division performed various electrical installations, repairs and maintenance on variable frequency drives for energy companies. Hanks's duties included bidding jobs, gathering parts and supplies, assigning crews to perform these jobs, and operational oversight of jobs.

9. Once a job was completed, Hanks was responsible for the administrative work, including generating field tickets. The field tickets showed parts used, equipment used, personnel performing the work, and hours billed for each. Hanks submitted the field tickets to SCS management for billing. SCS then generated an invoice and sent the bill, along with a copy of the field ticket, to the customer for collection.

10. Hanks informed SCS management that he owned a now defunct electric company known as Sandhills Electric. Hanks stated that Sandhills Electric still had a warehouse full of parts and equipment that could be used. SCS agreed to allow Hanks to use the old Sandhills Electric

equipment and for Hanks to sell his inventory of parts on jobs performed on behalf of SCS. Once Hanks submitted an invoice and field ticket to SCS, SCS paid Hanks for the equipment used and/or reimbursed Hanks for parts installed. SCS in turn billed the customer for this claimed service with a percentage markup.

11. In the summer of 2015, one of the owners of SCS (hereinafter, "Owner-1") noted that several customers had not paid their bills, and that these overdue amounts related primarily to the drive work performed by SCS under the oversight of Hanks.

12. Owner-1 reported to an FBI Task Force Officer ("TFO"), in substance and in part, the following:

   a. The accounts receivable for SCS began to grow old. Owner-1 started checking with Hanks about getting some of the invoices collected. Hanks provided several excuses, such as, that the company had moved and the invoice needed to be sent to a different address, or that the company had been bought out and the invoice needed to be sent to the new company.

   b. Owner-1 became more concerned and started checking invoices. One of the invoices in question was to Chaparral. The invoice got old and Owner-1 questioned Hanks about the invoice. Hanks told Owner-1 that Chaparral got bought out by Oxy Petroleum so the invoice needed to be re-addressed and resent. After this new invoice got old, Owner-1 checked with an Oxy representative who stated that Oxy did not buy out Chaparral to the best of his knowledge and that he did not know about any work allegedly performed by Sandhills Electric.

13. Hanks submitted at least four Sandhill Electric invoices to SCS, dated May through July 2015, for items that he had allegedly supplied to Chaparral Energy ("Chaparral"). These four Sandhill Electric invoices totaled approximately $114,682.87. SCS paid Hanks for these invoices. A "Maintenance Workorder," dated May 2, 2015, reflects a signature for Hanks at the bottom of the page, certifying, "I hereby acknowledge completion of the above described work." The Workorder reflects a billing address for Chaparral of 401 Cedar Lane, Oklahoma City, Oklahoma. Based upon Hanks' representations, SCS then invoiced Chaparral for the parts; the address

reflected on the SCS invoices was 401 Cedar Lake, Oklahoma City, Oklahoma. Chaparral's actual billing address is 701 Cedar Lake Blvd, Oklahoma City, Oklahoma. SCS did not receive payment for these invoices.

14.  During the investigation, the FBI TFO interviewed the Director of Accounting ("W-2") for Chaparral. W-2 stated, in substance and part, that SCS was not a vendor for Chaparral and that SCS had not done any work for Chaparral and had not submitted any invoices to Chaparral. W-2 further stated that Chaparral never owned any wells with the names EH Jones # 1A, East Roberts, EL Sedgewick # 3, Obrien # 15-2 or Sibley Jines (job locations where the work had purportedly been done). W-2 also stated that Sandhills Electric had been a vendor for Chaparral, but that there had been no activity from Sandhills Electric since April 2012 and the Master Service Agreement had been closed. W-2 further stated that 401 Cedar Lane is not associated with Chaparral in any way.

15.  Owner-1 confronted Hanks regarding the invoices. Hanks did not admit to Owner-1 that Hanks had submitted fraudulent invoices but offered to reimburse SCS $1,468,000 from a so-called "Randall Hanks Trust" account, which Hanks claimed was being held at the State National Bank of Big Springs, Texas. The investigation revealed that no such Trust was being held by the State National Bank of Big Springs. Hanks resigned from SCS on January 27, 2016.

16.  Owner-1 further reported that, after the invoices got old, SCS resent billing statements to the customers through the U.S. postal system or through email.

## The Respondent Property

17. A personal checking account (the "Account") held in the name of Randall Hanks was opened at State National Bank of Big Spring, Texas in or about June 2015.

18. On or about June 23, 2015, a cashier's check, in the amount of approximately $185,000 and made payable to Permian Basin Abstract (a title company), was issued from the Account. The cashier's check was used to purchase the Respondent Property.

19. Approximately two checks from SCS, in the amounts of $21,827.85 and $209,924.90, were deposited into the Account between June 10, 2015 and June 23, 2015. No other deposits were made into the Account before the issuance of the cashier's check to Permian Basin Abstract.

20. The two SCS checks referenced in paragraph 19 above were payments to Hanks for five invoices (numbered 1021, 1028, 1029, 1030, and 1031) that Hanks had submitted to SCS. The five invoices reflect Sandhills Electric on the top left. Four of the invoices were addressed to SCS Technologies. One of the invoices (#1029) was addressed to "Sabine Oil Operators," and reflected an address for Sabine of 2611 West Wall, Midland, Texas. The amounts billed by Sandhill Electric on the invoices were as follows: $21,827.85 on Invoice #1028; $26,965.65 on Invoice #1021; $58,119.45 on Invoice #1029; $53,225.85 on Invoice #1030; and $71,613.95 on Invoice #1031.

21. As a result of the five Sandhill Electric invoices, SCS submitted invoices to J. Brock (for Invoice #1021), Shinnery (for Invoice #s 1030 & 1031), Sabine Oil Operators (for Invoice #1029), and Chaparral (for Invoice #1028). Hanks provided the information regarding customer and job location to SCS, in order for SCS to send a bill to its purported customer. SCS never received payment for the invoices.

22. As noted above, Invoice #1029 from Sandhill Electric was addressed to "Sabine Oil Operators" at 2611 West Wall, Midland, Texas. The FBI TFO drove to West Wall Street in Midland Texas, and there was no building with such an address.

23. A search of Texas Secretary of State records for "Sabine Oil Operators, Inc." reflects the status of the company as "Forfeited existence."

24. The FBI TFO contacted SCS for any other addresses in its files for Sabine. SCS had in its records an additional address for Sabine, namely, 1415 Louisiana Street, Suite 1600, Houston, Texas. The FBI TFO contacted the Chief Accounting Officer and Controller for Sabine Oil and Gas Corporation, which is associated with that address. The accounting officer stated, in substance and in part, that SCS, Sandhill, and Hanks never had a Master Service Agreement with Sabine Oil and Gas Corporation, and that the company did not own any wells by the names listed on the SCS invoices (Texas Con 14 and Texas Cons 18-3).

25. The FBI TFO also interviewed the owner of Shinnery Oil Company, Inc. The owner stated, in substance and in part, that he had never used SCS or Sandhill Electric to perform any work on any of his oil leases. He had received billing statements from SCS in the mail twice, both for $175,888.26. The billing statements showed oil well numbers that he does not own or operate. He showed the TFO the two billing statements he had received from SCS, along with the original envelopes in which they had arrived. The envelopes showed U.S. Postal Service stamps.

26. Owner-1 reported to the FBI TFO that, based upon further investigation, the company learned that J. Brock could not have purchased the items listed in the Sandhills Electric invoice.

## V.
## PRAYER

WHEREFORE, Petitioner, United States of America, prays that due process issue to enforce the forfeiture of the Respondent Property, that due notice pursuant to Rule G (4) be given to all interested parties to appear and show cause why forfeiture should not be decreed,[1] that an order to command the United States Marshals Service to post the Notice of Complaint for Forfeiture in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, and 18 U.S.C. § 985(c)(1)(B), that the Respondent Property be forfeited to the United States of America, that the Respondent Property be disposed of in accordance with the law, and for any such further relief as this Honorable Court deems just and proper.

Dated: August 19, 2016

                              Respectfully submitted,

                              RICHARD L. DURBIN, JR.
                              United States Attorney for the
                              Western District of Texas

By: _/s/ Anna E. Arreola_
                              Anna E. Arreola
                              (New York Registration No. 4151775)
                              Assistant United States Attorney
                              700 E. San Antonio Ave., Suite 200
                              El Paso, Texas 79901
                              Tel.: (915) 534-6884
                              Fax: (915) 534-3461

---

[1] Appendix A, which is being filed along with this complaint, will be served on those known to the United States to have an alleged interest in the Respondent Property.

## VERIFICATION

Task Force Officer Mark L. Greenhaw declares and says that:

1. I am an Andrews County Deputy Sheriff assigned to the Federal Bureau of Investigation, Midland Resident Agency, as a Task Force Officer, and I am the investigator responsible for the accuracy of the information provided in this litigation;

2. I have read the above Verified Complaint for Forfeiture and know the contents thereof. Based upon information and belief, the allegations contained in the Verified Complaint for Forfeiture are true and correct. The sources of my information and the grounds for my belief include records obtained during the investigation and conversations with and documents prepared by law enforcement officers and others.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _19_ day of _August_, 2016.

_____
Mark L. Greenhaw, Task Force Office
Federal Bureau of Investigation
Midland Resident Agency